

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-19-2006

# Otto v. Warden Allenwood

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5377

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Otto v. Warden Allenwood" (2006). *2006 Decisions.* Paper 72.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/72

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 05-5377
_____

BUCKLEY OTTO

v.

WARDEN, FCI-ALLENWOOD
_____

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civ. No. 04-cv-01774)
District Judge: Honorable James F. McClure, Jr.// _____

Submitted Under Third Circuit LAR 34.1(a)
December 1, 2006

Before: SLOVITER, MCKEE AND AMBRO, CIRCUIT JUDGES

(Filed December 19, 2006)

_____

OPINION
_____

PER CURIAM

    Buckley Otto appeals from the District Court's order denying his petition for

habeas corpus under 28 U.S.C. § 2241. Otto argues that the Bureau of Prisons ("BOP")

miscalculated his current sentence by failing to credit him with time served on a state

sentence as well as by miscalculating his good time credit.  For the reasons that follow, we will affirm.

On June 30, 1983, Otto was sentenced to a twenty-year term of incarceration after being convicted in the United States District Court for the District of Connecticut of bank robbery, armed bank robbery, kidnapping during bank robbery, and conspiracy.   He was paroled from federal custody on March 9, 1992.  At the time Otto had 3,652 days remaining on his sentence.

On January 14, 1995, Otto was arrested by local authorities in Connecticut on a variety of charges.  On February 16, 1995, while Otto was awaiting trial, the United States Parole Commission issued a parole violator warrant based on Otto's arrest.  On February 23, 1995, the warrant was lodged as a detainer with the State of Connecticut. Otto was eventually convicted in the Connecticut Superior Court of criminal attempt to possess narcotics, criminal attempt to possess narcotics within 1500 feet of a school, and first degree recklessness.  He was sentenced to 20 years of imprisonment, suspended after the service of 12.  (Habeas Pet. at 16.)

On June 1, 2001, the Connecticut Board of Parole paroled Otto into federal custody.  On December 17, 2001, after a hearing, the United States Parole Commission revoked Otto's parole.  The Commission's decision noted that Otto had "been in both federal and state custody for 82 months," refused to credit any of the time that he spent on parole against his sentence, and recommitted him.   (Appellants Br. Ex. A.)   The BOP

2

calculated that Otto must serve the rest of his 3,652 day term and that he is eligible to earn up to 1,200 days of good time credit.

After challenging the BOP's sentencing calculation, Otto filed this petition for habeas corpus. In his petition, he claimed that he is entitled to immediate release because he had already served his entire 20 year term. He argued that the BOP had erred in failing to credit his time served on his state sentence and miscalculated his good time credits. The District Court denied the petition. After the District Court denied his motion for reconsideration, Otto appealed.[1]

Otto now argues that, because the Parole Commission's notice of action stated that "he has been in both federal and state custody for 82 months," the BOP must credit the time he spent in state custody against his sentence. However, that part of the notice of action is merely a summary of the reasons for the action taken by the Commission; it does not have the legal effect that Otto suggests. The Notice explicitly refused to credit against his sentence any of the time that Otto had been on parole, including the time he spent in state custody.[2] Thus, the Parole Commission's decision does not mandate that the BOP credit him with the time he served in state prison while on parole.

---

[1]We have jurisdiction pursuant to 28 U.S.C. § 1291 and our review of a District Court's decision to dismiss a § 2241 petition is plenary. See Cradle v. U.S. ex rel. Miner, 290 F.3d 536, 538 (3d Cir. 2002).

[2]The BOP has credited Otto with the time he spent in federal custody from June 1, when he was taken into federal custody, to December 17, 2001, when the Parole Commission revoked his parole.

Further, neither 18 U.S.C. § 3585, the sentencing statute governing the calculation of sentences at the time of Otto's most recent incarceration, nor 18 U.S.C. § 3568 (repealed 1984),[3] the sentencing statute in effect at the time of Otto's conviction, permit the BOP to credit the time that Otto spent serving his state sentence against his federal sentence. Section 3585(b)(2) expressly prohibits the BOP from crediting a federal prisoner with time he has spent in state custody that has been credited towards another sentence. See United States v. Wilson, 503 U.S. 329, 334 (1992). And under § 3568, courts cannot credit a prisoner with time served on a state sentence towards his federal sentence, unless the state sentence was imposed for the same crime or act. See United States v. Grimes, 641 F.2d 96, 99 (3d Cir. 1981).

Otto also argues that he should at least be credited with the one year and three months that he was in state custody prior to his state sentencing because he was prevented from gaining release on bond by the federal detainer.[4] Under § 3568, a prisoner's time spent in state custody pursuant to a federal detainer should be credited towards his federal sentence where the detainer was the exclusive cause of his incarceration and the

[3]§ 3568 states in relevant part:
> The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which the sentence was imposed.

[4]Otto was arrested on January 14, 1995, the detainer was lodged on February 23, 1995, and he was sentenced on May 20, 1996.

4

period of incarceration was not credited towards the service of his state sentence.  See

Boniface v. Carlson, 856 F.2d 1434, 1436 (9th Cir. 1988).  However, Otto produces no

evidence to support his claim that the federal detainer was the exclusive cause of his

incarceration pending his state trial, and the evidence in the record supports the opposite

conclusion.  Otto was unable to secure his release on bail during the five weeks that he

was in state custody prior to the lodging of the detainer.  Thus, it appears that the federal

detainer was irrelevant to Otto's continued pretrial custody for the state offense.

See Bloomgren v. Belaski, 948 F.2d 688, 690 (10th Cir. 1992) (noting that when the

filing of a federal detainer is irrelevant to a state prisoner's continued pretrial custody for

a state offense, the pretrial detention should not be credited against the federal sentence).

Otto claims that the BOP unlawfully deprived him of the 1,200 days of good time

credits that he had accumulated prior to his release on parole.[5]   However, under 28

C.F.R. § 2.35(b),[6] good time credit is "used up" when a prisoner is released on parole and,

---

[5]Otto also claims that he has been deprived of the good time credit that he should have accumulated while serving his state sentence.  However, because the BOP properly did not credit his time served on his state sentence against his federal sentence, he is also not entitled to federal good time credit for that time.

[6]§ 2.35(b) states:

> It is the Commission's interpretation of the statutory scheme for parole and good time that the only function of good time credits is to determine the point in a prisoner's sentence when, in the absence of parole, the prisoner is to be conditionally released on supervision, as described in subsection (a). Once an offender is conditionally released from imprisonment, either by parole or mandatory release, the good time earned during that period of imprisonment is of no further effect either to shorten the period of supervision or to shorten the period of imprisonment which the offender

5

thus, has no effect on a prisoner's term of imprisonment in the event of parole revocation. See Boniface v. Carlson (Boniface II), 881 F.2d 669, 671 (9th Cir. 1989); Booth v. United States, 996 F.2d 1171, 1173 (11th Cir. 1993).[7]

Otto argues that because § 2.35(b) was instituted in 1985, after his conviction, its application to his case works an ex post facto violation. Under the policy in effect at the time of Otto's conviction, a parole violator could still lose all of the good time credit that he had accumulated prior to being released on parole, but only if he was given notice of the possibility of forfeiture during his revocation proceeding. Section 2.35(b) made the effective loss of previously accumulated good time credit automatic, obviating any need for notice in the warrant. Accordingly, when Otto's parole was revoked, the charging instrument made no mention of the possibility of the loss of his previously accumulated good time credit. Otto claims that this application of § 2.35(b) to his case retroactively changed the procedures governing his punishment for violating his parole and led to an increased sentence in violation of the Ex Post Facto Clause.

The Ex Post Facto Clause prohibits laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." California Dep't of Corrections v. Morales, 514 U.S. 499, 504 (1995). In order to violate the Ex Post Facto Clause, a

_____

may be required to serve for violation of parole or mandatory release.

[7]Every Circuit that has considered the question has upheld § 2.35(b) as a permissible construction of the good time statutes. E.g., Patterson v. Knowles, 162 F.3d 574, 575-76 (10th Cir. 1998) (collecting cases).

retroactive change in policy must create a sufficient risk that a prisoner's punishment will be increased. Id. Retroactive changes to the regulations that govern the accumulation of good time credit can work an Ex Post Facto violation when they create a sufficient risk of increasing the length of a prisoner's incarceration. See Lynce v. Mathis, 519 U.S. 433, 446-47 (1997). However, Otto has provided no evidence that the changes in procedure wrought by § 2.35(b) were in any way responsible for the loss of his previously earned good time credits.

Prior to 1985, it was regular practice for parole violators to lose their previously accumulated good time credit, just as Otto did in 2001. See Paroling, Recommitting and Supervising Federal Prisoners, 50 Fed. Reg. 46282, 46282-83 (final action Nov. 7, 1985) (codified at 28 C.F.R. § 2.35) (supplemental information); Boniface II, 881 F.2d at 671. The only difference in Otto's case is that, pursuant to § 2.35(b), the parole violator warrant did not state that Otto would no longer benefit from his previously accumulated good time credit in the event of revocation. However, because § 2.35(b) did not actually change the policy governing the loss of good time credits, Otto would not have retained the benefit of the 1,200 days of good time credit that he had accumulated before his release in 1992 even in its absence. See id. Otto provides no evidence of any likelihood that, in the absence of § 2.35(b), he would have retained any of his previously accumulated good time credit. Because § 2.35(b) did not create a risk that Otto would serve a lengthened sentence, no ex post facto violation occurred. See Richardson v.

Pennsylvania Bd. of Probation and Parole, 423 F.3d 282, 292 (3d Cir. 2005) (finding no ex post facto violation where habeas petitioner was unable to show a sufficient risk that retroactive changes to parole law negatively impacted his sentence).

Because the BOP has correctly calculated Otto's sentence, the District Court was correct to deny his habeas petition. Accordingly, we will affirm the judgment of the District Court.