GLD-003                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2468
_____

JOSEPH W. FARMER,
                                                Appellant

v.

CATHERINE C. MCVEY; WALTER M. PHILLIPS; JEFFREY A. BEARD; WILLIAM
WARD; ALLEN CASTOR; BARBARA DESCHER; RICHARD KIPP; GARY LUCHT;
BENJAMIN MARTINEZ; NICHOLAS MULLER; SEAN RYAN; MICHAEL
WEBSTER; JAMES THOMAS; DONALD VAUGHN; DAVID DIGUGLIELMO;
JAMES WYNDER; MICHAEL KLOPOTOSKI; CARL L. LAVERY; MARTIN F.
HORN; JEROME W. WALSH

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 4-09-cv-00166)
District Judge:  Honorable Richard P. Conaboy

_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
October 6, 2011

Before:  FUENTES, GREENAWAY, JR., and STAPLETON, Circuit Judges

(Opinion filed: October 19, 2011)
_____

OPINION
_____

PER CURIAM

        Pro se appellant Joseph Farmer appeals the District Court's orders dismissing his

amended complaint. We have jurisdiction pursuant to 28 U.S.C. § 1291 and exercise a plenary standard of review. Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000). For the reasons set forth below, we will summarily affirm the District Court's judgment.

In 1982, Farmer was convicted in Pennsylvania state court of aggravated assault, unlawful restraint, and rape, and was sentenced to 13.5 to 32 years' imprisonment. Under the Pennsylvania Prisons and Parole Code ("the Parole Code"),[1] Farmer became eligible for parole upon completing his minimum sentence. See 61 Pa. Cons. Stat. Ann. § 6137(a)(3). In 1995, the Pennsylvania Board of Probation and Parole ("the Board") denied Farmer's request for parole, explaining that Farmer showed "very high assaultive behavior potential," that he needed counseling, and that he had failed to benefit from a treatment program for sex offenders. The next year, the Board again refused to parole Farmer, relying on similar grounds while also observing that Farmer was a "habitual offender" with two convictions for sex offenses.[2]

In December 1996 (after the Board had issued Farmer's second parole decision), Pennsylvania amended the Parole Code. While the Parole Code had previously "emphasized the values of rehabilitation and restoration to social and economic life," it

---

[1] At the time Farmer filed his complaint, "probation and parole in Pennsylvania were governed by Act 323 of August 6, 1941, P.L. 861, as amended. 61 P.S. §§ 331.1-331.34a. That act was repealed and essentially reenacted in August 2009" at 61 Pa. Cons. Stat. Ann. §§ 6111-6139. Fross v. Cnty. of Allegheny, 20 A.3d 1193, 1198 (Pa. 2011).

[2] We agree with the District Court that it was appropriate for it to consider the "indisputably authentic" records of Farmer's parole decisions without converting the motion to dismiss into a motion for summary judgment. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004).

"was modified to make public safety the primary consideration." Richardson v. Pa. Bd. of Prob. & Parole, 423 F.3d 282, 285 (3d Cir. 2005).

Since the Code's amendment, the Board has continued to deny parole to Farmer. In 2008, the Board concluded that it would be inappropriate to parole Farmer because, among other things, he had refused to accept responsibility for his offense and needed to participate in additional institutional programs.

After the 2008 denial, Farmer filed a complaint under 42 U.S.C. § 1983 in the District Court, alleging that the Board had retroactively applied the amendments to the Parole Code against him in violation of the Ex Post Facto Clause and the Due Process Clause. The District Court initially dismissed the complaint, concluding that Farmer could bring these claims only by means of a petition for a writ of habeas corpus. On appeal, we vacated and remanded. We held that because Farmer did "not request release from confinement or expressly seek to overturn the results of any prior parole proceeding," and instead challenged just the procedures that the Board had employed, he could proceed under § 1983. Farmer v. McVey, 349 F. App'x 671, 674 (3d Cir. 2009) (citing Wilkinson v. Dotson, 544 U.S. 74, 78-82 (2005)).

After we remanded the case, Farmer filed an amended complaint, further elaborating upon his claims. The defendants filed a motion to dismiss the amended complaint, and in two orders, the District Court granted the motion, dismissing Farmer's claims on the merits. Farmer then filed a timely notice of appeal to this Court.

We agree with the District Court's analysis of this case. "The ex post facto

inquiry has two prongs: (1) whether there was a change in the law or policy which has been given retrospective effect, and (2) whether the offender was disadvantaged by the change." Newman v. Beard, 617 F.3d 775, 784 (3d Cir. 2010) (internal quotation marks omitted). We have previously recognized that the 1996 amendments to the Parole Code did effect a change in the law; at the same time, however, we have rejected the notion that the application of these amendments represents a per se violation of the Ex Post Facto Clause. See Richardson, 423 F.3d at 291. Instead, to prevail, a prisoner must "show that as applied to his own sentence the law created a significant risk of increasing his punishment." Newman, 617 F.3d at 785 (internal quotation marks omitted). "A speculative and attenuated possibility of increasing the measure of punishment is not enough[.]" Id. (internal quotation marks, alterations omitted).

As the District Court held, Farmer has failed to make the requisite showing that he was disadvantaged by the amendments to the Parole Code. We have explained that, to satisfy this prong, a prisoner could, for example, "compare the parole rates for prisoners with similar convictions before and after the 1996 Amendments, state whether the Parole Guidelines would indicate that the petitioner was a good parole candidate, or draw inferences from the statement of reasons provided by the Parole Board regarding the criteria used." Richardson, 423 F.3d at 293. Farmer has presented no statistical evidence and, given that the Parole Board denied parole to him both before and after the 1996 amendments, he is hard pressed to show that he would be a particularly strong candidate for parole under the pre-1996 Parole Guidelines. Nor can he show, based on the

4

statements of reasons provided by the Parole Board, that the 1996 amendments affected the Board's consideration of his parole applications. At bottom, Farmer's argument is merely that the amendments have imposed stricter parole standards, and we have held that that type of showing is inadequate. See id. at 292. Therefore, we agree with the District Court that Farmer has failed to show that the amendments created a significant risk of increasing his punishment. See Newman, 617 F.3d at 786; Richardson, 423 F.3d at 293.[3]

We also agree with the District Court's disposition of Farmer's due process claim. While states may, under certain circumstances, create liberty interests that are protected by the Due Process Clause, see Sandin v. Conner, 515 U.S. 472, 483-84 (1995), procedural due process is generally satisfied if the procedures employed afford notice of the hearing, an opportunity to be heard, and notice of any adverse action. See Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 16 (1979). Likewise, we have explained that prisoners are entitled to have their parole claims "fairly considered" by the Board. Newman, 617 F.3d at 783. Here, Farmer has not claimed that he was denied

---

[3] In his amended complaint, Farmer occasionally refers to 42 U.S.C. § 13704, which provides for federal grants to states that comply with various prerequisites, including requiring that certain violent offenders serve a substantial percentage of their judicially imposed sentences. The precise contours of Farmer's argument concerning § 13704 are unclear. To the extent that he contends that the Board must require inmates to serve 85% of their maximum sentences in order to qualify for federal grants, he is incorrect. As the Pennsylvania Superior Court has explained, Pennsylvania qualifies for funds under § 13704 because its prisoners must serve 100% of their minimum sentences before becoming eligible for parole. See, e.g., Commonwealth v. Baldwin, 760 A.2d 883, 886 (Pa. Super. Ct. 2000). This requirement, currently codified at 61 Pa. Cons. Stat. Ann. § 6137(a)(3), predates both § 13704 and Farmer's conviction.

notice, an opportunity to be heard, or fair consideration of his parole request.  Therefore, his due process claim was properly dismissed.  See Newman, 617 F.3d at 783-84.

Accordingly, we will summarily affirm the District Court's order dismissing Farmer's amended complaint.  See 3d Cir. L.A.R. 27.4; I.O.P. 10.6.