PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 08-2652

———

CLIFFORD T. NEWMAN, JR.,
                                                    Appellant
                              v.

JEFFREY A. BEARD, Director of the Department
of Corrections; MICHAEL GREEN, Chairman of Probation
and Parole Board of Pennsylvania; DIANE L. DOMBACH,
Director of Sexual Offenders Assessment Board

———

On Appeal from the United States District Court
for the District of Western Pennsylvania
(D.C. Civil No. 3-06-cv-00214)
District Judge: Hon. Kim R. Gibson

———

Argued April 15, 2010

Before:  SLOVITER and HARDIMAN, Circuit Judges, and
POLLAK[*], District Judge

(Filed August 16, 2010)

———

Thomas S. Jones
Jerome J. Kalina (Argued)
Jennifer G. Betts
Jones Day
Pittsburgh, PA 15219

———

   [*] Hon. Louis H. Pollak, Senior Judge, United States District
Court for the Eastern District of Pennsylvania, sitting by
designation.

Attorneys for Appellant

Thomas W. Corbett, Jr.
        Attorney General
Kemal Alexander Mericli (Argued)
        Senior Deputy Attorney General
Calvin R. Koons
        Senior Deputy Attorney General
John G. Knorr, III
        Chief Deputy Attorney General
        Appellate Litigation Section
Office of Attorney General
Pittsburgh, PA 15219

Attorneys for Appellees

———

OPINION OF THE COURT
———

SLOVITER, *Circuit Judge*.

Appellant Clifford Newman, a convicted sex offender, argues that the Parole Board violated his First Amendment right, his right to due process, and the Ex Post Facto Clause of the Constitution by using his refusal to admit his guilt to adversely affect his eligibility for parole.

## I.

### Background

In 1987, Newman was found guilty of committing two rapes and related sexual offenses after a jury trial in a Pennsylvania state court. He was sentenced in 1988 to twenty to forty years imprisonment. Newman ultimately exhausted his direct and post-conviction appeals after more than a decade of litigation. He also sought federal habeas relief, which was denied notwithstanding his persistent and consistent claim that he is not guilty.

2

In 2000, while Newman was serving his sentence, the Pennsylvania General Assembly enacted 42 Pa. Cons. Stat. Ann. § 9718.1 (2001). That statute provides that certain sex offenders "shall attend and participate in a Department of Corrections program of counseling or therapy . . . ." *Id.* § 9718.1(a). A sex offender "shall not be eligible for parole unless the offender has . . . participated in the program . . . ." *Id.* § 9718.1(b)(1)(ii). The statute gives the Department of Corrections "the sole discretion with respect to counseling or therapy program contents and administration . . . ." *Id.* § 9718.1(c). The Department of Corrections administers a sexual offender program ("SOP") in accordance with § 9718.1. Prior to the enactment of § 9718.1, there was no Pennsylvania statute or regulation that required convicted sex offenders to attend a counseling or therapy program as a condition of parole eligibility.

According to Newman's complaint, the Department "requires all inmates to admit guilt" in order "to attend the [SOP]." App. at 25. Although an earlier version of the SOP included a "non-admitters program," the Department no longer offers the program at the State Correctional Institution at Houtzdale, where Newman is presently incarcerated. Newman alleges that he is unable to attend the SOP because he refuses to admit his guilt.

The parole process in Pennsylvania is administered by the Board of Probation and Parole, generally referred to as the "Parole Board." *See generally* 61 Pa. Cons. Stat. Ann. §§ 6111-6139. Newman became eligible for parole in 2007 and met with a parole hearing examiner for an interview. According to Newman's complaint, the hearing examiner "noted that [Newman] . . . ha[d] not attended the [SOP]" and stated that his failure to attend "put [him] in a 'Catch 22' since the Parole Board required the completion of the [SOP] before parole would be granted." App. at 29. On April 18, 2007, the Parole Board denied Newman's parole application. The Parole Board issued a written decision stating that "[y]our best interests do not justify or require you being paroled/reparoled; and, the interests of the Commonwealth will be injured if you were paroled/reparoled. Therefore, you are refused parole/reparole at this time." App. at 39.

The Parole Board gave the following reasons for denying Newman parole:

> Your minimization/denial of the nature and circumstances of the offense(s) committed.
>
> Your refusal to accept responsibility for the offense(s) committed.
>
> Your lack of remorse for the offense(s) committed.
>
> The negative recommendation made by the Department of Corrections.
>
> Your unacceptable compliance with prescribed institutional programs.
>
> Your need to participate in and complete additional institutional programs.
>
> Your interview with the hearing examiner.

App. at 39.

The Parole Board's written decision also stated that at Newman's next interview,

> the Board will review your file and consider . . . whether you have successfully completed a treatment program for sex offender[s,] whether you have received a favorable recommendation for parole from the Department of Corrections[,] whether you have maintained a clear conduct record and completed the Department of Corrections' prescriptive program(s)[,] [and] current mental health evaluation to be available at time of review.

App. at 40.

Newman has remained incarcerated since the decision and has not been granted parole. In 2007, Newman filed a pro se civil action under 42 U.S.C. § 1983 against various officials of

4

the Pennsylvania Department of Corrections (collectively, the "Parole Board") challenging, inter alia, the adverse parole determination. He thereafter filed an amended complaint asserting three claims relevant to this appeal.

First, Newman alleged that the Parole Board unconstitutionally required him to admit his guilt in violation of the First Amendment. Next, Newman alleged that "[t]he precondition . . . of an admission of guilt and the completion of the [SOP] made the parole process a sham where the [Parole Board] only went through the steps but did not give actual consideration to [Newman's] application which violates [his] Fourteenth Amendment due process rights." App. at 23. Finally, Newman alleged that the Parole Board "retroactively applied 42 Pa. [Cons. Stat. Ann.] § 9718.1 to [his parole application]" in violation of the Ex Post Facto Clause of the Constitution.[1] Appellant's Br. at 9. Newman sought injunctive and declaratory relief.

The Parole Board filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and the Magistrate Judge issued a Report and Recommendation that recommended dismissal of the amended complaint. The Magistrate Judge determined that Newman's constitutional claims failed because there is no federal or state right to parole. The Magistrate Judge also determined that Newman did not have standing to assert a due process claim based on 42 Pa. Cons. Stat. Ann. § 9718.1 because the statute "does not apply to him." App. at 9. The District Court summarily adopted the Report and Recommendation of the Magistrate Judge and dismissed the amended complaint. Newman filed this pro se appeal, and we appointed counsel.

## II.

---

[1] Newman's pro se amended complaint did not explicitly assert violation of the Ex Post Facto clause, but his appointed counsel in this appeal has construed Newman's claim as such without objection by the Parole Board. We will do the same.

5

## Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review of the District Court's order granting a motion to dismiss for failure to state a claim. *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009). We accept all factual allegations as true, construe the amended complaint in the light most favorable to Newman, and determine whether, under any reasonable reading of the amended complaint, he may be entitled to relief. *See id.* (quotation and citation omitted).

## III.

## Discussion

### A.    General Principles

The opinion in *McKune v. Lile*, 536 U.S. 24 (2002), is of particular relevance to the issues presented in this appeal because the Supreme Court was presented with arguments somewhat analogous to those made by Newman in this case. Lile, like Newman, was a convicted sex offender who persisted in maintaining his innocence and refused to participate in the state's Sexual Abuse Treatment Program which required him to sign an admission of responsibility form. *Id.* at 29, 31. The Court, in a plurality opinion, rejected Lile's claim that the consequential withdrawal of certain privileges violated his right against self-incrimination. *Id.* at 48. His status would be reduced from Level III to Level I, curtailing his visitation rights, earnings, work opportunities, ability to send money to family, canteen expenditures, access to personal television, and others. *Id.* at 39. Although the discussion was focused on the compulsion aspect of the Fifth Amendment, it is, if not directly precedential, certainly informative for our consideration of Newman's claims.

The *McKune* opinion recognized that "[s]ex offenders are a serious threat in this Nation." *Id.* at 32. The opinion stated that "[t]herapists and correctional officers widely agree that

clinical rehabilitative programs can enable sex offenders to manage their impulses and in this way reduce recidivism. An important component of those rehabilitation programs requires participants to confront their past and accept responsibility for their misconduct." *Id.* at 33 (citation omitted). It quoted from sources that state that denial is generally regarded as one of the principal impediments to successful therapy. *Id.*

We proceed to review Newman's claims in light of these considerations.

### B.      First Amendment Claim

Newman argues that the Parole Board violated his First Amendment rights by requiring him "to state a belief that he does not hold to be true" – i.e., his guilt – in order to obtain parole. Appellant's Br. at 24. The Parole Board contends that "[i]f it is not unconstitutionally compelled speech in violation of the Fifth Amendment, neither can it be such in violation of the First Amendment." Appellees' Br. at 31; *see* U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself."). As a threshold matter, we decline the Parole Board's invitation to cabin Newman's First Amendment claim under a Fifth Amendment "compelled speech" framework. "[T]he touchstone of the Fifth Amendment is compulsion . . . , " *Lefkowitz v. Cunningham*, 431 U.S. 801, 806 (1977), and "a violation of the First Amendment right against compelled speech" similarly "occurs only in the context of actual compulsion," *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 189 (3d Cir. 2005). The two amendments serve different purposes. The Fifth Amendment protects the right not to "be compelled in any criminal case to be a witness against [one]self," while the First Amendment protects, among other things, "the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). Newman has not been compelled to speak. If he did not seek parole voluntarily, he would remain in prison for the remainder of his sentence without admitting his guilt. *Cf. Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 286 (1998) ("It is difficult to see how a voluntary interview [for clemency] could 'compel' [the inmate] to speak."). Thus, we reject the Parole Board's suggestion that the

7

Fifth Amendment is implicated in this case, a claim that Newman disavows.

We turn instead to the First Amendment which protects the "right of freedom of thought" and "individual freedom of mind" and encompasses "both the right to speak freely and the right to refrain from speaking at all." *Wooley*, 430 U.S. at 714 (citations omitted). Thus, "a State may not inquire about a man's views or associations solely for the purpose of withholding a right or benefit because of what he believes." *Baird v. State Bar of Ariz.*, 401 U.S. 1, 7 (1971).

Nevertheless, an inmate's constitutional rights are "necessarily limited." *Waterman v. Farmer*, 183 F.3d 208, 213 (3d Cir. 1999). "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977). The Supreme Court "has repeatedly recognized the need for major restrictions on a prisoner's rights," *id.* at 129 (citations omitted), and it is settled law that an inmate "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system," *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.").

Newman has not alleged that the Parole Board's admission of guilt requirement serves no "legitimate penological objectives" or is not reasonably related to rehabilitation. *Pell*, 417 U.S. at 822. Nor could Newman have reasonably done so. As we noted above, a plurality of the Supreme Court recognized that "States . . . have a vital interest in rehabilitating convicted sex offenders" and "acceptance of responsibility for past offenses" is a "critical first step" in a prison's rehabilitation program for such offenders. *McKune*, 536 U.S. at 33. The plurality further stated that "[a]cceptance of responsibility is the beginning of rehabilitation." *Id.* at 47. The dissenting opinion was not to the contrary. Justice Stevens, joined by three other

8

Justices, acknowledged that a sex offender program requiring an admission of guilt "clearly serves legitimate therapeutic purposes." *Id.* at 68 (Stevens, J., dissenting).

In an apparent attempt to distinguish this authority, Newman argues that "[r]equiring *false* admissions of guilt from innocent prisoners . . . does not facilitate rehabilitation." Appellant's Br. at 27 (emphasis added). However, once the Commonwealth met its burden of proving at trial that Newman was guilty of the offenses, Newman no longer "come[s] before the Court as one who is 'innocent,' but, on the contrary, as one who has been convicted by due process . . . ." *Herrera v. Collins*, 506 U.S. 390, 399-400 (1993). It follows that the prison may structure its treatment programs and pursue legitimate penological objectives from that standpoint.[2] Newman's First Amendment claim was therefore properly dismissed.[3]

---

[2] Under *Turner*, 482 U.S. at 89-90, courts consider three factors once a "rational connection" has been shown between the policy and a legitimate penological interest. *Fontroy v. Beard*, 559 F.3d 173, 177-78 (3d Cir. 2009). Newman does not argue that the SOP ran afoul of those factors, so we have no occasion to address them.

[3] Newman also argues that he stated two additional First Amendment claims. First, Newman contends that he stated a valid claim for First Amendment retaliation. *See* Appellant's Br. at 27-28; *see also Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Next, Newman asserts that he stated a claim under the unconstitutional conditions doctrine. *See* Appellant's Br. at 29-30; *see also Anderson v. Davila*, 125 F.3d 148, 161 n.12 (3d Cir. 1997). Because we hold that the Parole Board did not violate Newman's First Amendment rights by requiring him to admit guilt to participate in the SOP, his claims for First Amendment retaliation and unconstitutional condition necessarily fail as well. *See Rauser*, 241 F.3d at 333 ("As a threshold matter, a prisoner-plaintiff in a retaliation case must prove that the *conduct* which led to the alleged retaliation was constitutionally protected.") (emphasis added); *Anderson*, 125 F.3d at 161 n.12 (explaining that the "government may not deny a benefit to a

## C. Fourteenth Amendment Due Process Claims

Newman also argues that the District Court erred by dismissing his due process claims. The Due Process Clause of the Fourteenth Amendment prohibits States from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Although Newman's pro se amended complaint does not distinguish procedural due process from substantive due process, we address both claims consistent with the parties' briefing.

### i. Substantive Due Process

"[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Conduct can violate substantive due process if it "'shocks the conscience,' which encompasses 'only the most egregious official conduct.'" *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008) (quoting *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003)). The conduct must be "intended to injure in some way unjustifiable by any government interest . . . ." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998).

Newman's substantive due process claim was properly dismissed because the Parole Board's alleged conduct was not arbitrary and does not "shock[ ] the conscience." *Chainey*, 523 F.3d at 219. As noted above, the Parole Board had legitimate penological reasons for requiring Newman to admit guilt in the SOP, the content of which is determined by the Department of Corrections in its "sole discretion." 42 Pa. Cons. Stat. Ann. § 9718.1(c). The Parole Board's conduct was therefore not "intended to injure in some way unjustifiable by any government

---

person on a basis that infringes his constitutionally protected freedom of speech . . . .") (citations and internal quotation marks omitted).

interest." *Lewis*, 523 U.S. at 849.[4]

### ii. Procedural Due Process

Newman also challenges the dismissal of his procedural due process claim, arguing that the Parole Board's "review of his application was a sham" that was "inextricably tied to [his] refusal to admit guilt . . . ." Appellant's Br. at 19. The Parole Board responds that Newman "has no actual right to parole . . . and thus no 'liberty interest' sufficient to claim an entitlement to any procedural due process whatsoever." Appellees' Br. at 12.

"In analyzing a procedural due process claim, the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000) (citing *Fuentes v. Shevin*, 407 U.S. 67 (1972)). "Once we determine that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it." *Id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). The underlying liberty interest can be derived directly from the Due Process Clause or from the state's statutory scheme. *See Asquith v. Dep't of Corr.*, 186 F.3d 407, 409 (3d Cir. 1999) ("A protected liberty interest may arise from only one of two sources: the Due Process Clause or the laws of a state.").

The Supreme Court has held that the Constitution does not establish a liberty interest in parole that invokes due process protection. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Thus, if Newman has a protected liberty interest in some aspect of his parole, it must derive from the Pennsylvania parole statute. *See Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) (recognizing that "States may . . . create liberty interests which are protected by the Due Process Clause").

---

[4] We have examined Newman's additional substantive due process arguments and find them unpersuasive.

The relevant Pennsylvania parole statute provides that the Parole Board "shall have the power, and it shall be its duty, to consider applications for parole by a prisoner . . . ." 61 P.S. § 331.22 (2007), *repealed by* 2009 Pa. Laws 33. The statute further provides that the Parole Board shall have "the duty" to consider, inter alia, "[t]he general character and background of the prisoner" and "the conduct of the person while in prison and his physical, mental and behavior condition and history . . . ." 61 P.S. § 331.19 (2007), *repealed by* 2009 Pa. Laws 33.[5]

The Parole Board concedes that Newman is entitled to have his parole application "fairly considered." Appellees' Br. at 12. Such a right is not without support. *See Mickens-Thomas v. Vaughn*, 321 F.3d 374, 393 (3d Cir. 2003) ("*Mickens-Thomas I*") (discussing Parole Board's duty to "give [the inmate] a fair hearing" in context of due process challenge); *Jamieson v. Commonwealth, Pa. Bd. of Prob. & Parole*, 495 A.2d 623, 627 (Pa. Commw. Ct. 1985) ("[A] prisoner does have the right to *apply* for parole . . . and have *that* application fairly *considered* by the Board.") (citations omitted); *accord Banks v. Bd. of Prob. & Parole*, 4 Pa. Commw. Ct. 197, 200 (1971). However, as the Pennsylvania Supreme Court has explained, "the Parole Board's decision to grant or deny parole does not affect an existing enjoyment of liberty." *Rogers v. Pa. Bd. of Prob. & Parole*, 724 A.2d 319, 323 (Pa. 1999); *see also Coady v. Vaughn*, 770 A.2d 287, 289 (Pa. 2001) ("[T]he decision to deny parole . . . does not implicate any constitutionally protected interest.").

Newman's procedural due process claim must fail because, to the extent that Newman has a state law right to have his application "fairly considered," the Parole Board gave his application all the consideration it was due. The Parole Board was permitted to consider Newman's "general character and background," his "conduct . . . while in prison," and his "mental and behavior condition." 61 P.S. § 331.19 (2007). Newman's lack of participation in the SOP and his refusal to admit guilt for the crimes of which he stands convicted fall within these

<hr />

[5] The statutes are currently codified at 61 Pa. Cons. Stat. Ann. §§ 6132 and 6135 (2010).

legitimate considerations.[6]

This is therefore not a case in which the Parole Board considered factors that were foreign to the parole statute. *See Block v. Potter*, 631 F.2d 233, 240 (3d Cir. 1980) ("[T]he Board applied standards that are divorced from the policy and purpose of parole, . . . violating [the inmate's] right to due process of law."). Nor is this a case in which the Parole Board arbitrarily denied parole based on race, religion, political beliefs, or another impermissible factor.[7] *See id.* at 237; *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) ("[T]here are some reasons upon which the government may not rely."). Accordingly, Newman's procedural due process claim was properly dismissed.

### D.     Ex Post Facto Claim

Finally, Newman argues that the District Court erred by dismissing his Ex Post Facto claim.[8]  The Ex Post Facto Clause "applies to a statutory or policy change that 'alters the definition of criminal conduct or increases the penalty by which a crime is punishable.'" *Mickens-Thomas I*, 321 F.3d at 383 (quoting *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 506 n.3 (1995)).

"The ex post facto inquiry has two prongs:  (1) whether there was a change in the law or policy which has been given retrospective effect, and (2) whether the offender was

_____

[6] Newman's conduct was also a legitimate consideration under the statute in effect when he was sentenced, which contains similar language.  *See* 61 P.S. § 331.19 (1988) ("[T]he board . . . shall consider . . . the general character and history of the prisoner . . . .").

[7] As noted above, there was no underlying First Amendment violation because of the legitimate penological interest in having inmates admit guilt in a treatment program for convicted sex offenders.

[8] The Ex Post Facto Clause of the Constitution states that "[n]o State shall . . . pass any . . . ex post facto Law."  U.S. Const. art. I, § 10, cl.1.

disadvantaged by the change." *Richardson v. Pa. Bd. of Prob. & Parole*, 423 F.3d 282, 287-88 (3d Cir. 2005). The Supreme Court has noted that "[r]etroactive changes in laws governing parole of prisoners, in some instances, may be violative of [the Ex Post Facto Clause]." *Garner v. Jones*, 529 U.S. 244, 250 (2000). This is because "[a]n adverse change in one's prospects for release [through parole] disadvantages a prisoner just as surely as an upward change in the minimum duration of sentence." *Mickens-Thomas I*, 321 F.3d at 392.

Newman argues that he has "adequately alleged both [prongs]" of an Ex Post Facto claim. Appellant's Br. at 15. The Parole Board responds that Newman's Ex Post Facto claim "fundamentally fails because, by its own terms, [42 Pa. Cons. Stat. Ann. § 9718.1] does not apply *per se* to [Newman's] convictions . . . and there is nothing in the pertinent notice of [the Parole Board's] decision . . . that indicates that [§ 9718.1] was wrongly applied to his case." Appellees' Br. at 10. The Parole Board further responds that it was permitted to consider Newman's participation in an SOP under the statute in effect when Newman was sentenced.

### i. *Retrospective Effect of Change in Law or Policy*

Newman alleges that there was a change in the law or policy which has been given retrospective effect that satisfies the first prong of the Ex Post Facto inquiry. Newman was sentenced in 1988. Section 9718.1 was not enacted until 2000, after Newman had served twelve years of his sentence. Newman alleges that when he "had his interview with the parole hearing examiner, she noted that [he] . . . ha[d] not attended the [SOP]" and that his failure "put [him] in a 'Catch 22' since the parole board required the completion of the [SOP] before parole would be granted." App. at 29.

The Parole Board argues that there can be no Ex Post Facto violation because its written decision does not mention § 9718.1. That omission cannot be dispositive. The Parole Board stated in its decision, inter alia, that Newman was denied parole because of his "denial of the nature and circumstances of the offense(s) committed," his "refusal to accept responsibility," his

14

"unacceptable compliance with prescribed institutional programs," his "need to participate in and complete additional institutional programs," and his "interview with the hearing examiner." App. at 39. These reasons could be construed as veiled references to Newman's failure to attend the SOP. *Cf. Mickens-Thomas v. Vaughn*, 355 F.3d 294, 307 (3d Cir. 2004) ("*Mickens-Thomas II*") ("Even though the Board did not specify [§ 9718.1], there is no question that the Board's new requirement commits . . . [an] *ex post facto* violation[].") This conclusion is bolstered by the fact that the Parole Board stated that it would review Newman's file at the next interview and consider, inter alia, whether Newman "successfully completed a treatment program for sex offender[s]." App. at 40.[9]

We will therefore assume arguendo that the "change in the law" brought about by § 9718.1 was "given retrospective effect." *Richardson*, 423 F.3d at 287-88; *cf. Mickens-Thomas II*, 355 F.3d at 306-07 (noting that retroactive application of § 9718.1 can violate the Ex Post Facto Clause when it required the inmate to "participate in the 'admitter' part of [the] sex offender therapy program").

*ii. Disadvantage by the Change in Law or Policy*

To proceed with his Ex Post Facto claim, Newman must also meet the second Ex Post Facto prong and allege that he was "disadvantaged by the change [in law or policy]." *Richardson*, 423 F.3d at 288. Newman "must show that as applied to his own sentence the law created a significant risk of increasing his punishment." *Garner*, 529 U.S. at 255. "[A] 'speculative and

---

[9] Indeed, the Historical and Statutory notes acknowledge the possibility that § 9718.1 could be applied retroactively in an unconstitutional manner. *See* 2000 Pa. Legis. Serv. 2000-98 (West) ("The addition of . . . § 9718.1 shall not preclude consideration of the factors set forth in that section in granting or denying parole for offenses committed before the effective date of this act, except to the extent that consideration of such factors is precluded by the Constitution . . . ."), *quoted in* Historical and Statutory Notes, 42 Pa. Cons. Stat. Ann. § 9718.1 (2007).

attenuated possibility of . . . increasing the measure of punishment' is not enough" for Newman to meet his burden. *Richardson*, 423 F.3d at 288 (alteration in original) (quoting *Morales*, 514 U.S. at 509). A comparable approach has been followed by the Pennsylvania Supreme Court. *See Cimaszewski v. Bd. of Prob. & Parole*, 868 A.2d 416, 427-28 (Pa. 2005).

In *Richardson*, we denied an evidentiary hearing where the habeas petitioner "provided no evidence, and for that matter . . . proffered no allegations, that a 'significant risk' of increased punishment was created by the application of" new parole guidelines. 423 F.3d at 293. We thus rejected the Ex Post Facto claim of an inmate that he was individually disadvantaged by the retroactive application of the new guidelines. By contrast, in *Mickens-Thomas I*, we granted habeas relief to an inmate who presented evidence that he had a significant likelihood of parole under an old policy but was denied parole under a new law, and that the Parole Board had paroled all other similarly situated inmates before the change in law. 321 F.3d at 387. We have since noted that *Mickens-Thomas I* "may be an exceptional case because of the compelling nature of the evidence of prejudice," though "evidence of such convincing quality" is not required. *Richardson*, 423 F.3d at 293.

Whereas the prejudice in *Richardson* and *Mickens-Thomas I* arose directly from the retroactive application of the relevant policy, in this case the potential prejudice arises from the retroactive application of § 9718.1 in conjunction with the prison's admission of guilt requirement. Standing alone, § 9718.1 merely requires that convicted sexual offenders attend an SOP in order to be eligible for parole. *See* 42 Pa. Cons. Stat. Ann. § 9718.1(a). It presents no potential prejudice of a constitutional magnitude. The statute can present a potential for disadvantage, however, if it is applied with the admission of guilt requirement, which carries the specter of collateral consequences. *See generally* Daniel S. Medwed, *The Innocent Prisoner's Dilemma: Consequences of Failing to Admit Guilt at Parole Hearings*, 93 Iowa L. Rev. 491, 541 (2008).

Analyzing Newman's claim in that context, Newman has not alleged that he would have been paroled but for § 9718.1,

nor has he alleged that similarly situated inmates were paroled before the passage of the statute.

The Supreme Court has recognized that because "most offenders will eventually return to society, [a] paramount objective of the corrections system is the rehabilitation of those committed to its custody." *Pell*, 417 U.S. at 823. Inasmuch as rehabilitation is a legitimate penological objective and the Supreme Court is satisfied that recognition of one's responsibility for past offenses is a "critical first step" toward rehabilitation, *McKune*, 536 U.S. at 33, Newman cannot show that the Parole Board's alleged retroactive application of § 9718.1 "created a significant risk of increasing his punishment,"[10] *Garner*, 529 U.S. at 255. Accordingly, the District Court properly dismissed his Ex Post Facto claim.[11]

**IV.**

**Conclusion**

---

[10] As noted above, the Parole Board could have legitimately considered Newman's "general character and history" even under the statute in effect in 1988 when he was sentenced. *See* 61 P.S. § 331.19 (1988).

[11] Notably, the Parole Board has not taken the position that the SOP is a form of rehabilitation and not "punishment" for Ex Post Facto purposes. *See Kansas v. Hendricks*, 521 U.S. 346, 370-71 (1997) (concluding that involuntary commitment statute "does not impose punishment; thus, its application does not raise ex post facto concerns"); *Chambers v. Colo. Dep't of Corr.*, 205 F.3d 1237, 1242 (10th Cir. 2000) (finding no Ex Post Facto violation because inmate's refusal to admit guilt in sexual offender treatment program did not increase his punishment); *Neal v. Shimoda*, 131 F.3d 818, 827 (9th Cir. 1997) (concluding that treatment program for sex offenders in which offenders must admit their guilt "does not criminalize conduct legal before its enactment" for purposes of Ex Post Facto claim (quoting *Hendricks*, 521 U.S. at 371)). Accordingly, we express no view on the merits of such an argument.

17

For the reasons set forth, we will affirm the judgment of the District Court.