GLD-249                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2472
_____

MICHAEL PERRY,
                                                    Appellant

v.

THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS (DOC);  SECRETARY
PENNSYLVANIA DEPARTMENT OF CORRECTIONS; SHARON BURKES,
Secretary of Corrections; DORINA VARNER, Chief Grievance Officer, (DOC);
MARTIN DRAGOVICH, Superintendent S.C.I. Chester; PAUL STOWITSKY,
Superintendent SRCF Mercer; M. W. HARLOW, Superintendent SRCF Mercer; DAWN
CHAMBERLAIN, Superintendent, SCI Pittsburgh; ROBERT SUNSHINE, Deputy SCI
Chester; DEB SAUERS, Deputy SCI Pittsburgh; MR. JACKSON, Unit Manager SCI
Chester; P. MICHAEL BIVINS, Unit Manager SCI Chester; WILLIAM WOODS, Unit
Manager SRCF Mercer; WAYNE EMERICK, Unit Manager SCI Pittsburgh; ARTHUR
ROTHWELL, Counselor SCI Chester; MS. KIMMEL, Counselor SRCF Mercer;
GEORGE MESAROS, Counselor SRCF Mercer; MACHINAK, Counselor SCI
Pittsburgh; LISA FOUST, Counselor SCI Mercer; MR. FOY, Corrections Officer SRCF
Mercer; MR. STEINDURF, Corrections Officer SRCF Mercer
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-10-cv-00386)
Magistrate Judge:  Honorable Cathy Bissoon
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
July 28, 2011

Before:  AMBRO, CHAGARES and COWEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: August 11, 2011 )

_____

OPINION
_____

PER CURIAM

Michael Perry, a prisoner of the Commonwealth of Pennsylvania proceeding pro se and in forma pauperis, appeals the dismissal of his civil rights complaint. We will affirm.

Perry filed suit on March 22, 2010, alleging that the defendants, all employees of the Pennsylvania Department of Corrections ("DOC"), violated his civil rights. Convicted in 1996 of various sexual offenses, for which he received a ten-to-twenty-year sentence, Perry describes himself as a model prisoner, voluntarily participating in therapy and "actively seeking those activities that would aid in his rehabilitation and release." Compl. ¶¶ 21–23, ECF No. 1. Yet despite these efforts, Perry was made aware that his status as a sex offender would complicate obtaining parole; in 2006, for example, he was told by a program manager that he was "not going to get paroled anyway." Compl. ¶ 24.

Perry completed his ten-year minimum while incarcerated at SCI Chester, but despite his good behavior, he was not given a positive parole recommendation by the DOC. He wrote to defendant Dragovich, the Superintendent of the prison, to ask what steps he could take to secure the recommendation in the future. He was informed that, among other factors, the nature of his crime and his "condescending attitude" had weighed against a positive recommendation. Compl. ¶ 32. Perry filed a grievance, and was told in the resulting series of responses (from defendants Bivens, Sunshine, and

2

Burks respectively) that he needed more therapy, had no right to demand parole at his minimum date, and struggled with as-yet "unresolved issues," such as an inability to discuss his crimes. Compl. ¶¶ 35–37. His parole was denied on March 24, 2006.

Following transfers to SCI Mercer and SCI Pittsburgh, the pattern would repeat: Perry would receive a negative recommendation from the DOC based on his original offense and his status as a sex offender, with parole being denied both for those reasons and due to a stated need for more "therapy." Perry's complaint suggested that he was actually being denied parole almost entirely due to the nature of his original offense, and that his attempts to discern exactly what was expected of him in order to obtain a favorable parole recommendation—what additional programs he needed to complete, what behavior he needed to modify—were met with insults, derision, and retaliation. Upon being informed in March 2009 that his fourth parole application had not drawn a positive recommendation from the DOC, Perry filed a grievance, requesting such a recommendation based on his good prison conduct and compliance with required sex-offender programs. Compl. ¶ 73. He was told that staff did not unanimously support his release and that he had unresolved "ongoing treatment needs," as well as a serious criminal history. Compl. ¶¶ 72–78. The responses also accused him of arrogance, condescension, remorselessness, and entitlement; the responses were then forwarded to the parole board ("Board"). See Mem. of Law 12, ECF No. 41. Perry's fourth parole application, like its predecessors, was denied.

Perry argued that the defendants' actions, which he described as "malicious" and "deliberate," violated his right to procedural and substantive due process, by arbitrarily

3

denying him a fair hearing in front of the Board, causing the Board to consider factors that should not have considered, and refusing to specify what type of therapy and additional programming would yield a positive recommendation. He partly based his claims on his assertion that the defendants violated state law and DOC policy. Perry separately alleged that the forwarding of his grievance responses to the Board constituted illegal retaliation, and claimed that the defendants had violated his right to equal protection. He requested several kinds of injunctive relief, including the removal of negative information from his files and a declaration of the unconstitutionality of the DOC's voting procedure; he also asked for damages.[1]

The defendants moved to dismiss, denying, inter alia, that the complained-of conduct stated a claim under 42 U.S.C. § 1983. The District Court[2] concurred. See generally Perry v. Pa. Dep't of Corr., No. 10-386, 2011 U.S. Dist. LEXIS 55268 (W.D. Pa. May 24, 2011). Perry filed a timely notice of appeal.

We must first determine whether the aspects of the suit addressing parole are properly cognizable under 42 U.S.C. § 1983,[3] as challenges to parole decisions are

---

[1] To the extent that Perry requested damages from the various state officials acting in their official capacities, his claims were barred by sovereign immunity. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). But claims requesting prospective injunctive relief from official-capacity defendants do not run afoul of sovereign immunity. See Iles v. De Jongh, 638 F.3d 169, 177 (3d Cir. 2011).

[2] The parties consented to jurisdiction by a United States Magistrate Judge. See ECF Nos. 8, 13; see also 28 U.S.C. § 636(c)(1).

[3] We have jurisdiction under 28 U.S.C. § 1291. Our review of the District Court's order granting dismissal is plenary, and we accept all well-pleaded allegations in the complaint

frequently in the exclusive domain of habeas corpus. See, e.g., Coady v. Vaughn, 251 F.3d 480, 485 (3d Cir. 2001) (holding that the appellant was required to challenge the execution of his sentence, inclusive of an adverse denial of parole by the Pennsylvania Board, under 28 U.S.C. § 2254). Guided by the Supreme Court's decision in Wilkinson v. Dotson, 544 U.S. 74 (2005), we believe that the entire complaint passes muster as a civil rights action. Perry does not ask that he be granted parole, nor does he demand an injunction allowing for speedier release into the community; rather, he simply requests that the inappropriate information used to influence the DOC's recommendation be purged from his files, that he be allowed to "fact-check" the information for accuracy, that he be provided with information regarding the amount of therapy needed to qualify for parole (with the option of "[s]pecify[ing] treatment needs and goals" to that end), and that the DOC be forced to comply with its own regulations in granting parole recommendations. See Compl. ¶¶ 90–92, 102–03. Success in any of these dimensions would not "necessarily demonstrate the invalidity of confinement or its duration." Wilkinson, 544 U.S. at 82. Rather, it would mean "at most [a] new eligibility review" or the possibility that, in a future "parole hearing[,] . . . parole authorities may, in their discretion . . . shorten [Perry's] prison term." Id.; see also Grier v. Klem, 591 F.3d 672, 677 (3d Cir. 2010).

In order to state a substantive due process claim, Perry must plead actions by the executive officials so abhorrent as to "shock the conscience." See Evans v. Sec'y Pa.

as true, drawing all reasonable inferences in Perry's favor. Capogrosso v. Sup. Ct. of N.J., 588 F.3d 180, 184 (3d Cir. 2009) (per curiam).

5

Dep't of Corr., ___ F.3d ___, 2011 U.S. App. LEXIS 9905, at *25 (3d Cir. Pa. May 16, 2011, No. 09-2657). While that standard "has some give in it," id. at *26, it does not "impos[e] liability whenever someone cloaked with state authority causes harm"; rather, "conduct intended to injure in some way *unjustifiable by any government interest* is the sort of official action most likely to rise to the conscience-shocking level." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 848–49 (1998) (emphasis added).

Perry does not distinguish in his complaint between conduct challenged under procedural due process and conduct challenged under substantive due process. Reading his allegations liberally,[4] we do not believe that any of the behavior alleged meets the exacting standard of substantive due process. Neither an inability to articulate exact counseling requirements for a parole recommendation nor the alleged contravention of DOC procedures, on such a small scale, serves to shock the conscience. Moreover, Perry does not allege that the Board could not have denied parole in the absence of the information to which he objects. Nor does he aver that there existed no legitimate government interest in recommending against granting him parole.

Perry also claims that the defendants constructively denied him a fair hearing in front of the Board, thereby violating his procedural due process rights. "A protected liberty interest may arise from only one of two sources: the Due Process Clause or the laws of a state." Asquith v. Dep't of Corr., 186 F.3d 407, 409 (3d Cir. 1999). It is well settled that the United States Constitution does not itself establish a liberty interest in

---

[4] See Huertas v. Galaxy Asset Mgmt., 641 F.3d 28 (3d Cir. 2011) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)).

6

parole. <u>Newman v. Beard</u>, 617 F.3d 775, 783 (3d Cir. 2010). Pennsylvania case law

strongly suggests that that no state-created liberty interest accrues in parole until parole is

actually granted.[5] <u>Nieves v. Pa. Bd. of Prob. & Parole</u>, 995 A.2d 412, 418 (Pa. Commw.

Ct. 2010); <u>see also</u> <u>Rogers v. Pa. Bd. of Prob. & Parole</u>, 724 A.2d 319, 325 (Pa. 1999)

("Our courts have consistently found that the Parole Act does not create a liberty interest

in parole. . . . Rather, parole is a matter of grace and mercy shown to a prisoner who has

demonstrated, to the Board's satisfaction, his ability to function as a law-abiding

citizen."). With no liberty interest at stake, no process was required; regardless, if due

process were required, we find that the recommendations to which Perry objects did not

deny him such. <u>See</u> <u>Newman</u>, 617 F.3d at 783.[6]

---

[5] Perry argues that a Pennsylvania statute, 42 Pa. Cons. Stat. § 9718.1, creates a liberty
interest in receiving sex-offender treatment, to the extent that the treatment is a
prerequisite for parole. <u>See</u> Arg. in Supp. of Appeal of Order Granting Defs.' Mot. to
Dismiss 2 (citing <u>Leamer v. Fauver</u>, 288 F.3d 532, 544 (3d Cir. 2002)). That statute,
greatly distilled, requires those convicted of certain enumerated offenses to participate in
sex-offender treatment in order to be eligible for parole. To the extent that the statute
applies to Perry, <u>see</u> Act effective Dec. 20, 2000, 2000 Pa. Laws 98, § 3 (applying section
9718.1 to offenses committed on or after the effective date of the act), any liberty interest
it might convey would be quite narrow, limited to the right to pursue such treatment if it
is indeed required for parole. While Perry does describe some impediments in seeking
the required treatment, successful completion of that treatment would not guarantee
parole under the statute, <u>see</u> 42 Pa. Cons. Stat § 9718.1(d)(3). Nor does anything in the
law prevent either the Board or DOC employees from determining that a prisoner needs
additional treatment. In sum, the statute nowhere guarantees a clear and static path from
treatment to eventual parole.

[6] Perry asserts in his complaint that Pennsylvania law "do[es] not permit the Parole Board
to consider the recommendations of prison officials concerning an inmate's parole."
Compl. ¶ 85, ECF No. 1. His reading of the statute in question (the version of 61 Pa.
Cons. Stat. § 331.19 in effect at the time of his parole decisions) does not appear to find
support in Pennsylvania case law. <u>See, e.g.</u>, <u>Evans v. Pa. Bd. of Prob. & Parole</u>, 820

Perry further alleges that the defendants violated his Equal Protection rights. He does not plead membership in a protected class, nor does he identify similarly situated inmates who were treated differently than he; in fact, as the District Court noted, he suggested that the "aberrant" treatment he received was actually quite common. Perry therefore cannot successfully raise a "class of one" Equal Protection claim, to the extent that such a theory would be appropriate in this context. See Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); see also Engquist v. Or. Dep't of Agric., 553 U.S. 591, 603 (2008) (observing, in dicta, that state action involving "discretionary decisionmaking based on a vast array of subjective, individualized assessments" does not violate Equal Protection "when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted").

Perry further claims that the defendants retaliated against him for filing grievances by "enter[ing] the[ir] accusations into [his] file and forward[ing] them to the Parole Board intending to prevent Plaintiff's parole." Compl. ¶ 106. He maintains that this

A.2d 904, 907 (Pa. Commw. Ct. 2003); McGarry v. Pa. Bd. of Prob. & Parole, 819 A.2d 1211, 1213 n.3, 1216 (Pa. Commw. Ct. 2003).

Indeed, we read the statute to sweep quite broadly. For one, it contains a catch-all provision: the Board may consider "the notes of testimony of the sentencing hearing, if any, *together with such additional information regarding the nature and circumstances of the offense committed for which sentence was imposed as may be available*." 61 Pa. Cons. Stat. § 331.19. Also, while Perry complains that the DOC impermissibly included its views on his underlying offense in its recommendation, he does not deny that the Board is required to "consider the nature and circumstances of the offense committed." Id. Thus, to the extent that Perry complains that the individual pieces of information contained in the DOC report would not have otherwise been available to the Board, he cannot show prejudice stemming from any alleged violation of procedure. See Wilson v. Ashcroft, 350 F.3d 377, 381 (3d Cir. 2003).

retaliation caused him to "refrain[] from filing formal grievances in the hopes of getting effective and meaningful parole consideration in the future." Compl. ¶ 109. In his response to the defendants' motion to dismiss, Perry clarified that this retaliation consisted of accusations of being "arrogant, condescending, unremorseful, entitled, and needing more therapy" in grievance responses, which were then forwarded to the Board. See Mem. of Law 12, ECF No. 41. First, as observed by the District Court, these responses would have followed in time the DOC's decision to not recommend him for parole, as Perry began pursuing his final set of grievances when he learned that he did not receive the DOC's recommendation; in other words, the Board already knew of the DOC's ambivalence toward Perry's parole application. See Compl. ¶¶ 73–81. Second, and taking the facts alleged as true, we conclude that forwarding these grievance responses, containing sentiment already known to both Perry and the Board, would not dissuade a person of ordinary firmness from exercising his right to pursue administrative remedies. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

Finally, Perry appears to stake a constitutional claim on the defendants' actions that allegedly violated state law and policy. "[B]y its terms, [42 U.S.C.] § 1983 provides a remedy for violations of federal, not state or local, law." McMullen v. Maple Shade Twp., 643 F.3d 96 (3d Cir. 2011). Hence, such claims are not cognizable under § 1983.

For the foregoing reasons, we find no substantial question to be presented by this

9

appeal.[7]  Accordingly, we will summarily affirm the judgment of the District Court.  <u>See</u>

<u>Murray v. Bledsoe</u>, ___ F.3d ___, 2011 U.S. App. LEXIS 11702, at *3 (3d Cir. June 10,

2011, No. 10-4397); <u>see also</u> Third Cir. L.A.R. 27.4; I.O.P. 10.6.

---

[7] We also hold that the District Court did not abuse its discretion in failing to offer Perry leave to amend his complaint.  <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002).