GLD-271                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1644
_____

PHILLIP LEE FANTONE,

Appellant

v.

MICHAEL J. HERBIK, DD in his official and individual capacity;
BRIAN V. COLEMAN, in his official and individual capacity;
ROBERT TRETINIK, Rn in his official and individual capacity;
PETE SAAVEDRA, in his official and individual capacity;
DARLA COWDEN, Pa. in her official and individual capacity
_____

On Appeal from the United States District Court
for Western District of Pennsylvania
(D.C. Civil No. 2:11-cv-00484)
District Judge:  Honorable Gary L. Lancaster
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
June 6, 2013
Before:  FUENTES, FISHER and VANASKIE, Circuit Judges

(Opinion filed: June 12, 2013)
_____

OPINION
_____

PER CURIAM

        Pro Se Appellant Phillip Lee Fantone, appeals from an order of the United States

District Court for the Western District of Pennsylvania granting Appellees' motions for

summary judgment in his civil rights action, and denying his motion for summary judgment. For the reasons set forth below, we will summarily affirm. See 3d Cir. L.A.R 27.4; I.O.P. 10.6.

## I.

Because we primarily write for the parties, we will only recite the facts necessary for our discussion. In April 2011, Fantone initiated this civil rights action pursuant to 42 U.S.C. § 1983 against various medical professionals and administrators at the State Correctional Institute at Fayette ("SCI-Fayette"), alleging violations of his Eighth and Fourteenth Amendment rights in connection with the medical care he received for his chronic back ailments while he was incarcerated there in 2009. Named as defendants are Brian Coleman, Superintendent, Robert L. Tretinik, Correctional Health Care Administrator (collectively the "Administrative Defendants"), Dr. Michael J. Herbik, Medical Director, Darla K. Cowden, Physician Assistant, and Dr. Peter Saavedra, Staff Psychiatrist (collectively the "Medical Defendants"). Fantone has exhausted his administrative remedies with respect to three specific claims.[1]

First, Fantone alleges that he received inadequate medical care for his back pain and that his request to see a spinal specialist was denied. Second, he alleges that the conditions of his confinement in the infirmary for 46 days violated the Eighth Amendment prohibition against cruel and unusual punishment because he was denied

---

[1] Under the Prison Litigation Reform Act ("PLRA"), inmates must exhaust their administrative remedies before filing a suit alleging specific acts of unconstitutional conduct by prison officials. 42 U.S.C. § 1997e(a).

2

outdoor exercise, a razor, television and access to a telephone, and his cell was illuminated twenty-four hours a day. Third, Fantone claims that his rights were violated because his requests for a handicapped cell or a wheelchair were denied, even though he claimed he was missing meals because he could not walk.

Fantone's medical records show that he was seen on countless occasions by the medical staff at SCI-Fayette. The medical staff provided pain medication in response to Fantone's claims of extreme pain and at one point, he was given a walker and one of the doctors ordered him a cane. As part of his treatment, Fantone underwent x-rays, an EMG, and MRIs. He also had physical therapy and psychiatric treatment for post-traumatic stress disorder, insomnia, and anxiety. At various points in his Progress Notes, it is noted that Fantone was ambulating without difficulty, able to walk without the cane or walker, and that he was performing exercises in his cell. In January 2010, while out on parole, Fantone underwent elective back surgery at UPMC Mercy.

Fantone and the Appellees moved for summary judgment. Adopting the Magistrate Judge's Report and Recommendation, the District Court denied Fantone's motion and granted the Appellees' motions. Fantone timely filed this appeal.

## II.

We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment. Howley v. Mellon Fin. Corp., 625 F.3d 788, 792 (3d Cir. 2010). In considering the record, we "apply[] the same standard that the court should have applied." Id. Summary judgment is only proper where no genuine

3

issue exists as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We may summarily affirm on any basis supported by the record if the appeal does not present a substantial question. Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

III.

In the context of Eighth Amendment claims based on medical care, a plaintiff must demonstrate deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 106 (1976). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009). For instance, a plaintiff may make this showing by establishing that the defendants "intentionally den[ied] or delay[ed] medical care." Id. (quotation marks omitted). However, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." United States ex rel. Walker v. Fayette Cnty., 599 F.2d 573, 575 n.2 (3d Cir. 1979) (internal quotation marks omitted).

Fantone has brought Eighth Amendment claims against the Medical Defendants, alleging that they were deliberately indifferent to his medical needs. We agree with the District Court that this claim fails. First, Fantone himself admits that his medical records for 2009 show nearly eighty sick call entries with the medical personnel at SCI-Fayette. During these sick call visits, he regularly received pain medication. He also received X-rays and an MRI, which Dr. Herbik reviewed. As a result of the MRI, which showed

4

degenerative disc disease and a disc bulge, Dr. Herbik ordered lower tier, bottom bunk housing status for Fantone. Nurse Practitioner Cowden also ordered the use of a cane for Fantone for one year. Fantone was also provided a lumbar support and he received an EMG. At one point, Fantone was placed in the infirmary for observation. While Fantone alleges mistreatment of his condition, he has not presented evidence demonstrating deliberate indifference on the part of the Medical Defendants and, thus, the District Court properly granted their motion for summary judgment.[2]

Fantone also alleges that the Medical Defendants were deliberately indifferent for failing to provide him with a wheelchair. However, there are various entries in Fantone's Progress Notes stating that Fantone was able to walk on his own, and that he was seen on several occasions exercising in his cell. Fantone has not provided any evidence refuting these contentions. Furthermore, a doctor not named in this lawsuit advised against a wheelchair when Fantone went for a sick call, explaining that ambulation helped his condition and the use of a wheelchair would lead to the inability to walk. Accordingly, Fantone has not demonstrated deliberate indifference for failure to provide him with a wheelchair.

Finally, to the extent that Fantone claims deliberate indifference for failure to send him to a specialist or failure to approve him for surgery, he has not alleged sufficient facts to support this claim. "In the context of a deliberate indifference claim based on failure to provide adequate medical treatment, '[i]t is well-settled that claims of

---

[2] Fantone has submitted several affidavits from other inmates who have witnessed him in extreme pain. We do not dispute that Fantone has a serious medical condition, but the

negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'" Singletary v. Pennsylvania Dep't of Corr., 266 F.3d 186, 193 (3d Cir. 2001) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir.1999)). Here, the record shows that the medical personnel reviewed Fantone's MRI and x-rays and treated his ailment. Fantone has not demonstrated that the Medical Defendants had a sufficient "culpable state of mind" in not referring him to a specialist or surgery and, thus, this claim fails.[3]

IV.

Fantone alleges that the conditions of his confinement in the infirmary for 46 days violated the Eighth Amendment prohibition against cruel and unusual punishment because he was denied outdoor exercise, a razor, television, access to a telephone, and his cell was constantly illuminated. Summary judgment in favor of the Appellees was proper in this instance. The Eighth Amendment protects prison inmates from cruel and unusual punishment. See, e.g., Farmer v. Brennan, 511 U.S. 825, 832 (1994). However, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. Rhodes v. Chapman, 452 U.S. 337, 349 (1981). To assert an Eighth Amendment conditions of confinement claim, a prisoner must satisfy both an objective and subjective test. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). Specifically, a prisoner must show that the alleged deprivation is "sufficiently serious" and that he has

---

medical records show that he was adequately treated for this condition.
[3] We note that the surgery Fantone received when out on parole was not emergency surgery, but was elective, and as the District Court points out, Fantone admits that the

been deprived of the "minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (1994). A prisoner must also demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials possessed a "sufficiently culpable state of mind" and demonstrated "deliberate indifference" to his health or safety. Id. Only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement. Hudson v. McMillian, 503 U.S.1, 8-9 (1992).

While the denial of exercise or recreation in some circumstances may result in a violation of the Eighth Amendment, see Peterkin v. Jeffes, 855 F.2d 1021, 1031-33 (3d Cir. 1988), "a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation." May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997). See also Knight v. Armontrout, 878 F.2d 1093, 1096 (8th Cir. 1989) (denial of outdoor recreation for thirteen days not cruel and unusual punishment). In this case, Fantone was in the infirmary because he complained about having trouble walking. Accordingly, it was reasonable for the Defendants not to offer Fantone outside exercise, when he would not have been able to participate because of his condition. Likewise, we agree that Fantone's allegation that he was not provided with a razor for 46 days is insufficient to state a claim under the Eighth Amendment. See Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988) (no Eighth Amendment violation when prison officials housed inmate for twenty-eight days in roach-infested cell and denied him toilet paper for five days, and soap,

---

surgery was not as successful as he thought it would be: afterwards, he still suffered from chronic pain.

7

toothbrush and toothpaste for ten days). Finally, continuous lighting has been held to be permissible and reasonable in the face of legitimate penological justifications, like the need for security and the need to monitor prisoners. See O'Donnell v. Thomas, 826 F.2d 788, 790 (8th Cir. 1987); see generally Turner v. Safley, 482 U.S. 78, 89 (1987). In response to Fantone's grievance, Coleman stated that the lights remain on for security reasons and to allow for observation of inmates housed in the infirmary. Fantone has not shown that the lights were kept on for any impermissible purpose and, thus, the constant illumination does not rise to the level of cruel and unusual punishment.[4] Overall, the record shows that the prison complied with constitutional standards at the most basic level, and Fantone does not provide any evidence from which a reasonable jury could conclude that he was deprived of the "minimal civilized measure of life's necessities," Farmer, 511 U.S. at 834 (1994), or that his health and safety were at risk. See Hassine v. Jeffes, 846 F.2d 169, 174-75 (3d Cir. 1988).[5]

V.

---

[4] In some instances where continuous lighting causes inmates to suffer physical and psychological harm, courts have held that living in constant illumination is without penological justification. See, e.g., Keenan v. Hall, 83 F.3d 1083, 1090-91 (9th Cir. 1996) (considering a claim from a prisoner who suffered grave sleeping and other problems because of large florescent lights directly in front of and behind his cell that constantly illuminated his cell 24 hours a day in such a way that he could not distinguish day from night). However, here, Fantone's complaints of insomnia and physical discomfort are the result of his back condition.

[5] We agree with the District Court that the denial of telephone and television privileges does not amount to cruel and unusual punishment. See Gladson v. Rice, 862 F.2d 711, 713 (8th Cir. 1988) (prisoner's constitutional guarantee against cruel and unusual punishment was not violated by county prison's denial to him of unlimited access to certain amenities and privileges such as television and telephone).

Fantone has also asserted deliberate indifference against Coleman and Tretinik, two prison administrators[6], alleging failure to provide adequate medical treatment, yet their only involvement in Fantone's medical care was through handling his grievances. The Administrative Defendants have submitted declarations to this effect, stating that they have no responsibility or authority to treat inmates medically, but that they do handle inmate grievances. Fantone has not shown otherwise. In Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993), we concluded that the prison warden and the State Commissioner for Corrections were not deliberately indifferent under the Eighth Amendment "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Id. at 69. As further explained in Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004), "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Id. at 236. We concluded that "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Id. Moreover, once a prison grievance examiner becomes aware of potential mistreatment, the Eighth Amendment does not require him or her to do more than "review[] . . . [the prisoner's] complaints and verif[y] with the medical officials that [the

---

[6] Although Tretinik is technically a registered nurse, while acting as the Corrections Health Care Administrator ("CHCA"), he acted in a purely administrative role and did not provide direct medical treatment to inmates. Part of his role as the CHCA involved

9

prisoner] was receiving treatment." Greeno v. Daley, 414 F.3d 645, 655-56 (7th Cir. 2005) (citing Spruill, 372 F.3d at 236). Here, the record is devoid of any evidence to suggest that Coleman and Tretinik, as prison administrators, had a reason to believe that the prison doctors were either mistreating or not treating Fantone, or that they inappropriately handled his grievances. Accordingly, summary judgment in favor of the DOC Defendants was proper.[7]

## VI.

Fantone has also alleged violations of the Fourteenth Amendment due process clause. First, with respect to his procedural due process rights, he complains about being in isolation for 35 days.[8] We have held that this type of confinement does not constitute an "atypical and significant hardship" so as to trigger due process rights. See Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997) (finding that fifteen months in segregation was not an atypical and significant hardship); Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002) (holding that seven months' disciplinary confinement "does not, on its own, violate a protected liberty interest as defined in [Sandin v. Conner, 515 U.S. 472 (1995)]."). Second, to the extent that Fantone has brought a substantive due process claim not

---

answering grievances regarding medical treatment of inmates, such as those filed by Fantone.

[7] Similarly, Fantone's claims against his psychiatrist, Dr. Saavedra, for failure to intervene in his medical treatment, also fail. See Cuoco v. Moritsugu, 222 F.3d 99, 111 (2d Cir.2000) ("A doctor associated with a prison cannot be held responsible for failing to intercede in the treatment of a prisoner simply because the prisoner button-holes him and insists that he do so.... [The prison psychiatrist's] refusal to intervene in the medical treatment of another doctor's patient simply because the patient demanded it was objectively reasonable as a matter of law.").

10

covered by his Eighth Amendment claims, we agree with the District Court that there is nothing in the record demonstrating that the Defendants' conduct "shocks the conscience." See Newman v. Beard, 617 F.3d 775, 782 (3d Cir. 2010) ("Conduct can violate substantive due process if it shocks the conscience, which encompasses only the most egregious official conduct."). Thus, Fantone's Fourteenth Amendment claims were properly dismissed.[910]

## VII.

For the foregoing reasons, no substantial question is presented and we will summarily affirm the judgment of the District Court. We deny Fantone's motions for appointment of counsel and production of documents.

---

[8] Fantone claims it was 46-days, but the record shows that it was 35 days. Regardless of the precise duration, his Fourteenth Amendment claim fails.

[9] Fantone claims that the Magistrate Judge failed to address the fact that he was placed in isolation for retaliation for filing grievances against the Defendants in violation of his First Amendment rights. A prisoner litigating a retaliation claim must show that the conduct provoking the alleged retaliation was constitutionally protected, that he suffered some "adverse action" at the hands of the prison officials "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights," and that the constitutionally protected conduct was a substantial motivating factor in Defendants' conduct. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (alteration in original) (internal quotation marks omitted). Here, the record does not support a finding that Fantone was subject to adverse actions of the type that would deter a prisoner of ordinary firmness from exercising his constitutional rights.

[10] The District Court properly found that because Fantone has not established any violation of his federal rights, he cannot have a claim for civil conspiracy under Section 1983.

11